UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
DAVID SMITH,

                 Petitioner,                             **OPINION AND ORDER**
                                                          06-CV-0178 (NG) (SMG)
   -against-

**DALE ARTUS, Superintendent, Clinton Correctional Facility,**

                 Respondent.           x
----------------------------------------------------------

**GERSHON, United States District Judge:**

*Pro se* petitioner David Smith brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is being held in custody in violation of the Constitution and laws of the United States pursuant to the judgment of a court of the State of New York. Specifically, petitioner argues that he was denied the effective assistance of trial counsel because his attorney "failed to prepare for trial and needlessly revealed to the jury that [petitioner] was an admitted drug dealer who, according to a 'key' witness who did not testify at trial, had robbed the brothel involved in this case just two weeks prior to the charged robbery. . . ." For the reasons stated below, petitioner's application for a writ of habeas corpus is denied.

## I. PROCEDURAL HISTORY

Following a jury trial in New York Supreme Court, Kings County (Knipel, J.), petitioner was convicted of two counts of robbery in the first degree, N.Y. Penal Law § 160.15(4). Petitioner was sentenced, as a second violent felony offender, to two concurrent seventeen year prison terms.

Petitioner filed a *pro se* motion, pursuant to N.Y. Crim. Proc. Law § 440.30, to vacate his judgment of conviction, raising three claims: (1) defective grand jury presentation, (2) withholding of vital evidence, and (3) newly discovered evidence. In an order dated October 1, 2002, the Supreme Court denied petitioner's motion, holding, *inter alia*, that the claims were barred under N.Y. Crim. Proc. Law § 440.30(4)(a) for failure to allege any ground constituting a legal basis for the motion and under Section 440.30(4)(b) for failure to substantiate all essential facts. *People v. Smith*, Indict. No. 3470/01, pp. 2-3 (N.Y. Sup. Ct. Kings Co. Oct. 1, 2002).

On direct appeal to the Appellate Division, Second Department, with the aid of an attorney, petitioner claimed that he had been denied effective assistance of trial counsel. On November 29, 2004, the Appellate Division affirmed petitioner's conviction, holding that "the defendant received meaningful representation" and that "defense counsel presented a reasonable defense, interposed appropriate objections, and effectively cross-examined witnesses." *People v. Smith*, 12 A.D.3d 707 (N.Y. App. Div. 2004) (citations omitted). Petitioner's application for leave to appeal to the New York Court of Appeals was denied on January 28, 2005. *People v. Smith*, 4 N.Y.3d 767 (2005). On January 13, 2006, petitioner filed this petition for a writ of habeas corpus, claiming ineffective assistance of trial counsel, making the same argument he made to the Appellate Division.

## II. DISCUSSION

### A. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that adjudication of the

claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Determinations of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see Carey v. Musladin*, __ U.S. __, __ (2006) (noting that, in the absence of applicable Supreme Court holdings, "it cannot be said that the state court 'unreasonably applied clearly established Federal law.'"). Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. In order to grant the writ, there must be "[s]ome increment of incorrectness beyond error," although "the increment need not be great; otherwise,

habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (citation and internal quotation marks omitted).

## B. Merits of Petitioner's Claim

To succeed on an ineffective assistance of counsel claim, a petitioner must show that (1) counsel's performance fell below the objective standards of reasonableness dictated by prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-89, 694 (1984). Under the first prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). To succeed on the second prong, a "defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, the issue before this court is whether the state court unreasonably applied *Strickland* or made a decision that was contrary to *Strickland*. *Williams*, 529 U.S. at 367; *Henry v. Poole*, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 126 S.Ct. 1622 (2006); *Loliscio v. Goord*, 263 F.3d 178, 192-93 (2d Cir. 2001). As will be seen, petitioner has made no showing here that the Appellate Division either unreasonably applied, or made a decision contrary to, *Strickland*.

**1. Facts**

Petitioner asserts that he received ineffective assistance of counsel when his attorney "failed to prepare for trial and needlessly revealed to the jury that [petitioner] was an admitted drug dealer who, according to a 'key' witness who did not testify at trial, had robbed the brothel involved in this case just two weeks prior to the charged robbery . . . ." Appellant's Br. to App. Div. 12, attached to Pet. In his opening statement, petitioner's attorney told the jury:

> You will hear evidence that [Israel Mazariegos] was supposedly . . . in a pizza shop next to the brothel when it was robbed on April 21st, and you will hear evidence [that] when he was taken to the 79th Precinct after the robbery for questioning by Detective Danchuk he said he saw [petitioner] who he knows as a drug dealer on Fulton who robbed the place two weeks ago.

T. 15-16.[1] Further into his opening, petitioner's attorney stated:

> The evidence will show you . . . that [petitioner] . . . made a knowing and voluntarily (sic) statement to Detective Stokely telling her in essence that he was paid $50 a week to act as security for the whorehouse and that he heard that the whorehouse got robbed and that he didn't rob the place. That he sells drugs and that he isn't a robber.

T. 18. In his brief, petitioner argues that his trial attorney "unreasonably relied on the People to elicit the evidence he needed" and that, when the People failed to call Israel Mazariegos as a witness and never entered petitioner's exculpatory statement into evidence, "counsel was essentially left without a defense theory and needlessly had revealed to the jury that [petitioner] was a drug dealer, who had robbed the brothel previous to the charged incident." Appellant's Br. to App. Div. 12, attached to Pet.

---

[1]Citations to "T." refer to the trial transcript beginning April 1, 2002. Citations to "S." refer to the sentencing transcript dated May 1, 2002.

Taken in the light most favorable to the Prosecution, the evidence established that the petitioner had engaged in a gunpoint robbery of employees of a brothel on April 21, 2001. The People's theory of the case was that petitioner, a drug dealer working on the same street as the brothel, was displeased that the brothel attracted unwanted attention, negatively affecting his business. T. 9. The prosecutor told the jury that "[i]nstead of shutting them down, [petitioner] decided that he was going to tax them." T. 9. This theory was developed by the prosecutor in summation.

The theory of the defense was that Israel Mazariegos hired petitioner, a drug dealer working on the same street as the brothel, to guard the brothel from robbery and to give notice if it were raided by police. When the brothel was robbed on two separate occasions and petitioner was not watching the door, Mazariegos was angry with petitioner for not doing his job. In retaliation, Mazariegos framed petitioner by telling police that petitioner was the one who robbed the brothel. For defense counsel, that petitioner was a drug dealer in front of the brothel not only explained why this arrangement worked well for both parties, but also why employees of the brothel were able to identify him in a line-up after concocting their stories.

It was reasonable for defense counsel to believe that the People would call Israel Mazariegos. Mazariegos had identified petitioner in a line-up and was listed as a potential witness during *voir dire*. In fact, during the trial, the prosecutor explained to the judge that they had attempted to locate Mazariegos by going to three different boroughs and tracking down his landlord, but concluded that he must have left the country. Nonetheless, even without Mazariegos, defense counsel continued with his theory throughout the trial. In summation, counsel laid out a coherent

6

and comprehensive theory of the case based on testimony he elicited through other witnesses in support of his theory. Counsel also addressed the absence of someone named as a potential witness during *voir dire*, and mentioned throughout the trial, by stating "wouldn't we have liked to have seen Israel Mazariegos testify before us, but you know what, he is nowhere to be found . . . ." T. 318.

**2. *Strickland* Analysis**

In making an ineffective assistance of counsel claim, a petitioner must first show that counsel's performance fell below the objective standards of reasonableness dictated by prevailing professional norms. *Strickland*, 466 U.S. 687-89. It is the petitioner's burden to overcome the "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland*, 466 U.S. at 689. While, ultimately, defense counsel's theory of the case did not prevail, courts should not "second guess matters of trial strategy simply because the chosen strategy was not successful." *Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir. 1983).

In telling the jury that Mazariegos would testify that "he saw [petitioner] who he knows as a drug dealer on Fulton who robbed the place two weeks ago," defense counsel not only was anticipating expected prosecution testimony to defuse its impact, but also was moving forward with his theory of the case. Likewise, when counsel stated in his opening that petitioner told Detective Stokely "he sells drugs and that he isn't a robber," he reasonably anticipated the People would offer evidence that he was a drug dealer. Counsel had reason to believe that the prosecution's witnesses would mention this since, in his opening, the prosecutor described petitioner as a drug dealer several times. During sentencing, the People explained to the court that they had intended to elicit

7

information that petitioner was a drug dealer and "anticipated Carmen Fuentes would talk about her knowledge of the defendant's drug activity [but that] she refused to do so when asked questions about drug opportunity, drug business by me . . ." S. 29. Because defense counsel crafted his opening strategically in an effort to mitigate damaging testimony by the People's witnesses and further his theory of the case, defense counsel's opening did not fall below the objective standards of reasonableness dictated by prevailing professional norms. Insofar as petitioner argues that counsel "should have prepared an independent basis" for the defense theory, in the event Israel Mazariegos did not testify, he offers no "independent basis" that could have been offered other than what counsel did present through the other witnesses.

Furthermore, in determining whether counsel's performance met the objective standard of reasonableness, a court should "assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that counsel rendered reasonable professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986)(quoting *Strickland*, 466 U.S. at 690). Here, petitioner's attorney zealously advocated for him throughout all court proceedings. Counsel requested *Wade*, *Huntley*, and *Dunaway* suppression hearings, which were held before the trial commenced. He made numerous other motions *in limine* during the course of the trial in an effort to secure fairness in the identification of his client. He made appropriate objections during trial and vigorously cross-examined the People's witnesses establishing both inconsistencies and evidence supporting the defendant's theory of the case. He also presented two witnesses on defendant's behalf, one a police officer and the other a civilian eye-witness who saw two people running from the robbery site, neither of whom was the defendant. T.

249-53, 256, 269-276. Finally, counsel delivered a coherent and comprehensive summation, highlighting the inconsistencies in the testimony of the People's witnesses and reinforcing the defense theory.

In light of counsel's advocacy during court proceedings, petitioner's contention that counsel "failed to prepare his case for trial" is without merit. In fact, upon conclusion of the trial, the judge noted that "[b]oth lawyers, defense and prosecution, demonstrated superior ability in vigorously and ably representing their respective client's (sic)." S. 30.

### III. CONCLUSION

For the reasons set forth above, petitioner's application for a writ of habeas corpus is denied. Since petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Moreover, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that *in forma pauperis* status is denied for the purpose of an appeal. The Clerk of Court is directed to enter judgment for respondent and close this case.

**SO ORDERED.**

_____/s/_____

**NINA GERSHON**
**United States District Judge**

Dated: May 7, 2007
Brooklyn, New York